Argued and submitted May 6, at Pendleton, Oregon, judgment modified and affirmed as modified August 3, 1988

In the Matter of the Marriage of

BURTON,
*Respondent,*

*and*

BURTON,
*Appellant.*

(CV 86-654; CA A44298)

758 P2d 394

Leeroy O. Ehlers, Pendleton, argued the cause and filed the brief for appellant.

Milo Pope, Mt. Vernon, argued the cause for respondent. With him on the brief were Robert E. Ridgway and Kilpatricks & Pope, Mt. Vernon.

Before Warden, Presiding Judge, and Graber, Judge, and Riggs, Judge pro tempore.

WARDEN, P. J.

## WARDEN, P. J.

Wife appeals from the judgment in this dissolution action. The issues concern property division, spousal support and attorney fees. We modify the property division and otherwise affirm.

Husband and wife cohabited, unmarried and married, for a total of eight years. Although they maintained separate bank accounts, they generally used their income—and, it appears, their credit—for their mutual benefit. Wife took on most of the traditional duties of a housewife, helped to raise husband's children from his previous marriage and worked outside the home at various jobs during much of the period of cohabitation. The parties lived well beyond their income, with the result that, although the dollar value of their assets increased, so did their debts. The primary assets are husband's home and insurance agency, which the court awarded to him; the debts are mortgages on the home and a variety of credit union and finance company loans and credit card obligations. The court awarded husband assets with a net value of $24,494 after the debts that he has to pay, and it awarded wife assets worth $1335 less than the debts that it ordered her to pay.[1]

In reaching its decision, the trial court gave considerable weight to the different values of property that each party brought to the marriage and did not adequately consider the increase in the value of those assets *during* the relationship.[2] After a relationship of the length here, both parties are entitled to share, generally equally, in the increased value of all of their assets. ORS 107.105(1)(f) requires the court to consider the contribution of a spouse as a homemaker as a contribution to the marital assets and to presume that that contribution was equal to that of the other spouse. *See Crislip and Crislip,* 86 Or App 146, 738 P2d 602 (1987); *Olinger and*

---

[1] Although wife disputes certain items of the award, we see no reason to alter the trial court's categorization or distribution of any of the assets. We modify the judgment only because of the court's failure to award wife half of the amount by which the net assets increased in value during the parties' relationship.

[2] The period of cohabitation before the marriage is relevant to determining the length of the marriage. *Caverly and Caverly,* 65 Or App 98, 100, 670 P2d 199, *rev den* 296 Or 236 (1983). The court should consider the entire length of the relationship, not simply the time during which the parties were legally married, in determining the value of the assets for the property division.

*Olinger,* 75 Or App 351, 707 P2d 64, *rev den* 300 Or 367 (1987). The trial court failed to apply that statutory requirement correctly.

Because of the error, we modify the property award on *de novo* review. In doing so, we generally accept the trial court's determination of values, but in some instances we are unable to do so. One problem is that wife, in her testimony, gave the value of the property as of the date the parties began cohabiting, while husband generally focused on the date of the marriage. To the degree possible, we determine values from the date cohabitation began. *See* n 2, *supra.*

Husband bought the house in 1977 for $43,500; for lack of better evidence, we take that to be its value in March 1978, when the parties began cohabitating. In 1986, an independent appraisal placed the value at $54,500, an increase of $11,000. Much of that increase comes from improvements made during the relationship. In 1980, there were two mortgages on the house, one for $39,500 and one for $8000. There is no evidence of when the second mortgage was created or of the amount owed on the first mortgage in 1978. Husband had made the payments on the first mortgage as they came due, and we assume that the balance owing in 1978 was about $40,000. We also assume that the second mortgage was created some time after the relationship began, which is consistent with the parties' general pattern of going into debt to finance their life style.

Husband's insurance agency was worth $1100 in 1978 and $41,100 in 1986.[3] The increase in value is $40,000. The total increase in the parties' assets, therefore, was $51,000. In March, 1978, wife had no debts, and husband's debts were $40,000, the amount of the mortgage on his house, and a credit card balance of $800, for total debts of $40,800. At the time of the trial, the total debts, including the second mortgage, were $79,066, an increase of $38,266. The net increase in the parties' assets, therefore, was $12,734. The trial court, however, effectively awarded wife a net loss of $1335. She is entitled to

[3] The 1986 value includes both the base contract value of the insurance agency and a contractual bonus of three per cent of that value. The total is what husband would have received if he had quit the business at the time of trial. Although, as he points out, he can receive the value of the agency only by quitting, it remains an asset in whose increased value wife is entitled to share.

enough to erase that loss plus half the remainder, *i.e.,* $1335 plus half of $11,399. We award wife an equalizing judgment of $7035, to be paid in equal monthly installments, including interest at 9 percent, over five years, beginning on the effective date of the appellate judgment.

The court awarded wife spousal support of $200 a month for a year. Athough that amount is low and the period is short, considering wife's limited income and her needs, it is all that husband can afford, particularly in the light of our modification of the property distribution. We therefore affirm that portion of the judgment.

■ Wife's final assignment is that the court erred by not awarding her attorney fees. She did not include a request for fees in her response to husband's petition, nor did she present any evidence during the trial concerning the amount of fees to which she believed she was entitled or of the reasonableness of that amount. Instead, she followed the procedures of ORCP 68C and presented her case for attorney fees at a separate hearing after the trial. The court found that her request for $1800 was reasonable, but it held that the ORCP 68C procedure was inapplicable. It therefore denied her any fees on the ground that she had not proven her entitlement at trial.

ORCP 68C(1)(a) provides that the procedures which the rule establishes for determining attorney fees do not apply when ORS 107.105(1)(i) is the source of the right to fees, as it is in this case. The parties did not stipulate during the trial that wife could wait until a post-trial hearing to present her attorney fees claim. When, during the trial, wife's attorney asked her if she believed that husband should pay her attorney fees, husband's attorney objected, arguing that there was no stipulation or anything else before the court relating to attorney fees. The court allowed wife to answer the question after her attorney pointed out that wife had requested fees in her statement under UTCR 8.010(2). Even if that statement was sufficient to raise an issue of attorney fees, wife did not present any evidence during the trial of the amount that she sought or of its reasonableness. There is nothing in the record to suggest that husband or the court led her to believe that they had agreed to wait until after the trial to decide the attorney fees issue, and wife does not argue otherwise. The court did not err in not awarding wife attorney fees.

Judgment modified to award wife judgment against husband for $7035, payable in equal monthly installments, including interest at 9 per cent per annum, over five years beginning on first day of first month after effective date of the appellate judgment; affirmed as modified. Costs to wife.