Argued and submitted May 1, 1991, judgment modified in part; affirmed as modified
August 26, 1992

In the Matter of the Marriage of

Julia A. FOLLANSBEE,
*Respondent - Cross-Appellant,*
*and*

Robert L. ACKERMAN,
*Appellant - Cross-Respondent.*

(D8903-61784; CA A64830)

836 P2d 763

George W. Kelly, Eugene, argued the cause and filed the briefs for appellant - cross-respondent.

Gary J. Zimmer, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Kennedy, King & Zimmer, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

Husband appeals from a dissolution judgment, assigning error to the trial court's division of the marital estate. Wife cross-appeals, also contending that there were errors in the property division. On *de novo* review, we modify the trial court's division of property.

The parties were married in 1976 after living together for approximately one year. This was the second marriage for both. Wife is 40 years old. She is an attorney working as a clerk for a federal court. Husband, 52, is an attorney in private practice. Their incomes are approximately the same. The dissolution judgment was entered on April 12, 1990. The marital assets, valued by the court at approximately $370,000, were divided equally.

Husband's first challenge concerns the trial court's valuation of a commercial building, the South A Building. Before the marriage, husband had acquired a one-half interest in it. He had his office there for some time but has since moved to a new location. At the time of the marriage, the building was worth $28,590. Its present fair market value is $55,380 and, at the time of trial, it had been on the market for nearly eight months. The trial court was confident that the building would eventually be sold and, in determining its value, deducted 7 percent for the costs of sale. Appreciation during the marriage, after deducting the costs of sale, is $22,913, of which one-half is a marital asset. The trial court awarded the parties' interest in the building to husband, attributing to it a value of $11,457. The court then gave wife an equalizing award of other property. However, it refused to make a deduction for any tax liability on the proceeds of a sale of the building, reasoning that the amount of taxes would be too speculative. Husband assigns error to the trial court's refusal to consider the tax liabilities when valuing the property.

■ ■ Consideration of the tax consequences of a sale of property is not appropriate if a sale is not contemplated. *Barlow and Barlow*, 111 Or App 179, 183, 826 P2d 18, *rev den* 313 Or 299 (1992); *McLemore and McLemore*, 102 Or App 47, 792 P2d 481 (1990). However, when it is reasonably certain that a sale will occur and there is evidence that provides a

reasonable basis on which to make an informed judgment as to the probable tax liability, we have allowed an adjustment for taxes. *See, e.g., Alexander and Alexander*, 87 Or App 259, 742 P2d 63 (1987). Here, husband testified that the building would be sold. In fact, it had been on the market for several months. We conclude, as did the trial court, that the sale of the building is a reasonable certainty. Furthermore, there is sufficient evidence on which to make a reasonable estimate of the tax liability. Husband's accountant testified that that would be approximately 39 percent. Applying that rate to the parties' $11,457 share of the increase in value that occurred during the marriage results in a tax liability of approximately $4,468. The value of the interest in the South A Building awarded to husband should have been $6,989, rather than $11,457, and wife's award should be reduced accordingly.

■        In her cross-appeal, wife argues that the trial court erred in considering only the appreciation in the value of the South A Building as a marital asset. She contends that the trial court should have awarded her one-half of the full value of the building, as opposed to half of the increase in value. The South A Building was husband's office before the marriage. Accordingly, we conclude that his interest in the property before the marriage is not a marital asset subject to the presumption of equal contribution. Nonetheless, wife could be awarded part of husband's premarital interest if we were to determine that that would be just and proper under all of the circumstances. ORS 107.105(1)(f). We find no reason here to conclude that granting her any of the premarital interest would be just and proper. She should receive only one-half of the increase in value.

■        In his second assignment of error, husband argues that the trial court erred in valuing his law practice, because it failed to consider the tax consequences of its sale. He contends that that sale also is a virtual certainty. However, he has no present plans to sell it. He testified that he intends to stay with his practice "for at least another 15 to 17 years." Although there might be tax consequences later, their amount and timing are too speculative to be considered at this time. We conclude that the trial court properly declined to consider them.

■     Husband next assigns error to the trial court's decision to include as a marital asset the present value of his law practice, $60,404, as opposed to only its increase in value during the marriage. The trial court awarded the practice to husband at its present value and gave wife an equalizing judgment. The value of husband's interest in his practice acquired *before* the marriage is not subject to the statutory presumption of equal contribution. However, like the South A Building, it is subject to division by the court in a manner that is just and proper in all the circumstances. ORS 107.105(1)(f); *see Dull and Dull*, 104 Or App 275, 278, 800 P2d 306 (1990).

■     In concluding that the entire value of husband's practice should be considered a marital asset, the trial court said:

> "I am not satisfied that a professional practice is so unique that a premarital interest should be set aside at the conclusion of a long-term marriage."

Although the parties substantially intermingled their financial affairs throughout the marriage, we do not think that there is a justification for giving wife a share of husband's premarital interest in his law practice. There is no evidence that wife directly contributed financially or otherwise to the practice. She did not work for him or with him at the office, and there is no evidence that her activities provided him with opportunities in his work that he otherwise would not have had. It was not just and proper for the trial court to award her part of husband's pre-marital interest in his law practice. Wife is entitled only to half of the increase in the value of the practice during the marriage.

■     On her cross-appeal, wife also argues that the trial court erred in its valuation of the law practice. She argues that the court erred in reducing the value to account for income taxes on accounts receivable. Husband's expert testified that the present value of husband's interest is $76,666 before deducting any tax liabilities, and $60,404 after reducing the value by the tax liability on the accounts receivable. The trial court determined the value to be $60,404. In *Reiling and Reiling*, 66 Or App 284, 292, 673 P2d 1360 (1983), *rev den* 296 Or 536 (1984), we held that the value of a law practice should not be reduced by the amount of taxes that would be

imposed on the accounts receivable, because the reduction "would be speculative." We agree with wife that the trial court should not have allowed the reduction. The trial court undervalued husband's actual interest in his practice by the amount of the potential tax liability on the accounts receivable, $16,262.

Accordingly, we begin with a value of $76,666 as husband's interest in his law firm. Wife is entitled to one-half of the increase in value since the marriage. The value of husband's interest at the beginning of the marriage was $34,691. Thus, the increase in value was $41,975. The value of the asset awarded to husband should have been $41,975, rather than $60,404, and wife's award should be reduced accordingly. After this adjustment in value and the adjustment on the South A property, husband should be awarded an equalizing judgment of $22,897.

■ Husband's next assignment of error involves another commercial building, located on Centennial Boulevard. In May, 1989, after the parties had been separated for about a year, husband's professional corporation purchased the building for its place of business. Husband argues that his portion of the down payment "came entirely from funds that husband had separately accumulated since the parties' permanent separation" and that the trial court erred in dividing and awarding the increase in value of the investment equally.

■ ■ Because the Centennial Boulevard property was acquired during the marriage, it is a marital asset and is subject to the presumption of equal contribution. ORS 107.105(1)(f). Property acquired after a separation may be treated as an individual asset only if the presumption of equal contribution established by ORS 107.105(1)(f) is overcome by a showing that the "other spouse did not contribute, either directly or indirectly, to the acquisition or increase in value of that asset after the date of separation." *Thompson and Thompson*, 103 Or App 458, 461, 797 P2d 1077 (1990). The spouse disputing the presumption has the burden of proving by a preponderance of the evidence that the other spouse did not contribute to the acquisition of the property. *Stice and Stice*, 308 Or 316, 326, 779 P2d 1020 (1989). Generally, that showing involves a long period of separation and substantial financial independence before the dissolution.

The evidence shows that, at the time of trial, the parties had been separated for one year, a short period, and they were not then financially independent of one another. Although they maintained separate households, they kept joint bank accounts and consulted with each other on major expenditures. With respect to this specific purchase, husband did not prove that it was acquired solely with his funds. Wife consented to the use of $5,000 in joint funds for the down payment, and some of her assets were used as collateral to obtain a loan. The trial court properly included the Centennial Boulevard property in the marital assets.

■ Finally, husband contends that the trial court erred in failing to give a value to wife's law degree, which she obtained during the marriage. He argues that, under ORS 107.105(1)(f), the only just and proper result would be to consider the cost of tuition, $14,000, as a joint asset that is in wife's portion of the marital estate. Although one spouse's contribution to the other's education can be a consideration in determining whether spousal support is warranted, ORS 107.105(1)(d)(C), under most circumstances it is not appropriate to consider it as part of the property division in a dissolution proceeding. We agree with the trial court's refusal to do it here.

■ Wife's remaining argument on her cross-appeal is that the trial court erred in not increasing her award to offset "husband's waste of the marital assets." The parties purchased a motel in 1980, which resulted in a significant loss. A large portion of the down payment on the motel came from life insurance proceeds that wife had received. She argues that she relied on her husband's expertise in real estate and that he was negligent in handling the investment. We conclude, however, that the blame for the loss should not be placed entirely on husband. Both parties are well-educated, and together they regularly engaged in buying and selling real estate. Wife was involved in the motel transaction from its inception and also participated in its management. The record does not support her allegation that husband wasted any marital assets. The trial court properly determined that wife's award should not be increased for this reason.

Judgment modified to award husband a $22,897 judgment against wife, payable on or before January 1, 1996,

with interest at 9 percent per annum from the date of entry of the appellate judgment; affirmed as modified. No costs to either party.